UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS


TARGETSMART HOLDINGS, LLC,      )
and TARGETSMART COMMUNICATIONS, )
LLC,                            )
                                )
            Plaintiffs,         )    CIVIL ACTION NO.
                                )    18-11365-DPW
v.                              )
                                )
GHP ADVISORS, LLC, d/b/a GOOD   )
HARBOR PARTNERS, and CATALIST LLC, )
                                )
            Defendants.         )


MEMORANDUM AND ORDER
February 6, 2019

This case arises out of an agreement between the

Plaintiffs, TargetSmart Holdings, LLC and TargetSmart

Communications, LLC (together, "TargetSmart"), and the

Defendant, GHP Advisors, LLC, doing business as Good Harbor

Partners ("GHP"), to explore opportunities for TargetSmart to

partner or merge with other companies engaged in similar

business.  The arrangement with GHP, TargetSmart alleges, was a

scheme to induce TargetSmart to disclose confidential and

proprietary information to benefit its competitor, the

Defendant, Catalist, LLC ("Catalist").

TargetSmart brought this action against GHP and Catalist

under both federal and state law for misappropriation of trade

secrets, unjust enrichment, and breach of contract.

Remaining before me following the filing of an amended complaint is the motion [Dkt. No. 38] by Catalist to dismiss the complaint for lack of personal jurisdiction, or in the alternative, to transfer the case to the District of Columbia, and to dismiss for failure to state a claim.

## I. BACKGROUND

### A. *The Parties*.

TargetSmart Holdings, LLC is a technology and consulting company that specializes in providing campaigns, candidates, and organizations with data and software to expand their audience base. [Dkt. No. 36 at ¶ 11]. It is a Delaware Limited Liability Company with its principle place of business in Washington, DC. [*Id*. at ¶ 1]. TargetSmart Communications, LLC, is a wholly owned subsidiary of TargetSmart Holdings and is also a Delaware Limited Liability Company with its headquarters in Washington, DC. [*Id*. at ¶ 2].

GHP is a Massachusetts Limited Liability Company headquartered in Boston. [*Id*. at ¶ 3].

Catalist, LLC is a Delaware Limited Liability Company headquartered in Washington, DC. [*Id*. at ¶ 4]. Like TargetSmart, Catalist specializes in helping Democratic and progressive candidates reach wider audiences. [*See id*. at 1, Introduction Statement, ¶¶ 18, 35].

This case can be said to have been brought pursuant to this court's federal question jurisdiction, 28 U.S.C. § 1331, because TargetSmart's claim of violation of the Federal Defend Trade Secrets Act appears to predominate. [Dkt. No. 36 at ¶ 82]. Since the state law claims arise out of the same set of factual circumstances, I may exercise supplemental jurisdiction to hear those claims, even in the absence of complete diversity of the parties. *See generally* 28 U.S.C. § 1367.

**B.  *Factual Background***

As reflected in the operative pleading, the Second Amended Complaint, the facts are as follows.

<u>1.    The Agreement Between GHP and Catalist</u>

On November 3, 2017, GHP entered into an agreement with Catalist to advise the company "in connection with the potential acquisition of a specified, pre-identified target company." [Dkt. No. 36 at ¶ 13; Dkt. No. 39-1, Exhibit 1, GHP Engagement Letter (hereinafter "Letter Agreement"), at 2]. The "target company" was TargetSmart, [Dkt. No. 36 at ¶ 14], and the agreement provided that GHP would conduct due diligence of the target company as "mutually determined to be appropriate." [Dkt. No. 39-1, Letter Agreement at 2, § 2(a)]. It also required GHP to keep Catalist "informed of the activities undertaken by GHP . . . and all performances of Services required of GHP" under the terms of the Agreement. [*Id.* at 4,

§ 6].

The Letter Agreement stated that GHP was not an employee or agent of Catalist, and instead was working as an "independent contractor." [*Id*. at 4, § 6]. TargetSmart alleges that Catalist entered into the agreement with GHP in order to acquire its confidential business information, [Dkt. No. 36 at ¶ 18], and that it directed, ratified, or otherwise had a right to control GHP's interactions with TargetSmart. [*Id*. at ¶ 20].

### 2. GHP Approaches TargetSmart

In December 2017, GHP approached TargetSmart about a potential "business opportunity." [*Id*. at ¶¶ 21-24]. During the initial call on December 13, 2017, GHP represented to TargetSmart that it had been retained by individual political donors who wanted to combine TargetSmart and other companies to improve and streamline the data infrastructure available to Democratic and progressive candidates. [*Id*. at ¶ 24]. As a result of the conversation, TargetSmart and GHP entered into a Mutual Nondisclosure Agreement ("Mutual NDA") to allow the parties to exchange non-public, confidential, and proprietary information. [*Id*. at ¶¶ 27-28; *see also* Dkt. No. 39-2, Exhibit 2, Form Nondisclosure Agreement from TargetSmart]. The Mutual NDA prevented both parties from using or disclosing confidential information without the other's prior written consent. [*Id*. at ¶¶ 29-30]. In its amended motion to dismiss, Catalist provided

this court with a copy of a form Nondisclosure agreement listing TargetSmart as one of the parties. [Dkt. No. 39-2, Exhibit 2]. However, I observe this copy of the NDA does not include the name or signature of the other party to the agreement.

At GHP's request, and in anticipation of a meeting on December 21, 2017 in Boston, TargetSmart sent GHP a memorandum which included confidential and proprietary information about its data, products, services, platforms, and software, as well as information about its finances and possible growth opportunities. [Dkt. No. 36 at ¶¶ 31-32]. The memorandum stated that the information was protected by the Mutual NDA. [*Id*. at ¶ 32].

At the December 21st meeting, GHP again told TargetSmart that it represented wealthy donors, and indicated that its clients were interested in combining TargetSmart and Catalist, its competitor. [*Id*. at ¶¶ 33-35]. TargetSmart informed GHP that it would only consider a merger if the funders acquired both companies, if TargetSmart remained in control, and if the Catalist leadership team was not part of the management of the combined entity. [*Id*. at ¶ 35]. GHP then indicated that it would like to proceed with the necessary due diligence for such a transaction and sought more information from TargetSmart about its book of business, its relationships with third parties, its vendor agreements, and its financial information. [*Id*. at 36].

On January 3, 2018, TargetSmart told GHP that it was uncomfortable with the request and asked for GHP to provide a rough approximation of the proposed purchase price for its "political business" in exchange for access to TargetSmart's financials. [*Id.* at ¶¶ 37-39]. For its part, TargetSmart ultimately provided further information to GHP, including information about its financials. [*Id.* at ¶ 40].

### 3. Information Is Acquired by Third Parties

On February 8, 2018, TargetSmart learned that a writer with ties to the CEO of Catalyst was contacting TargetSmart's employees and asking for information about its relationships with particular clients. [Dkt. No. 36 at ¶ 41]. TargetSmart contacted GHP about the inquiries, and GHP represented that the inquires were not part of its due diligence and that "they would be 'shocked' if Catalyst was behind the writer's inquiries." [*Id.* at ¶ 44]. TargetSmart also contacted a member of the Board of Directors for Catalyst, who promised that the inquiries would stop. [*Id.* at ¶ 45].

On February 21, 2018, TargetSmart discovered that a third-party source had told its client that "Catalyst was in the process of buying TargetSmart." [*Id.* at ¶ 46]. It reported the leak to GHP, which reassured TargetSmart that it took the confidentiality of its clients very seriously. [*Id.* at ¶ 47].

## 4.  The Transaction Falls Through

On March 14, 2018, TargetSmart met with GHP and Catalist in the District of Columbia to discuss the proposed transaction. [Dkt. No. 36 at ¶¶ 49-51].  During the meeting, Catalist indicated that it was not under an NDA and offered to leave the room while TargetSmart discussed the NDA with GHP.  [*Id*. at ¶ 51].  At that meeting, GHP told TargetSmart that it had not raised enough money to fund the acquisition, but also indicated that GHP had shared information about TargetSmart with at least two representatives of Catalist and that one of Catalist's funders had broken the Mutual NDA.  [*Id*. at ¶¶ 52-56].

On April 10, 2018, TargetSmart, taking the position that GHP had violated the Mutual NDA, sought several assurances from GHP.  [*Id*. at ¶ 59].  GHP responded on April 13, denying that it had breached the NDA but admitting that it had shared information with two individuals at Catalist.  [*Id*. at ¶ 60].  GHP also attached a letter that purported to show that Catalist was under an NDA with TargetSmart.  [*Id*. at ¶ 61].

TargetSmart alleges that GHP altered the Mutual NDA by including signatures from individuals at Catalist, though Catalist itself never signed or received copies of the NDA. [*Id*. at ¶ 61].  TargetSmart further alleges "Catalist knew or should have known that TargetSmart did not request that Catalist or any of its representatives sign an NDA."  [Dkt. No. 28; Dkt.

No. 36 at ¶ 61].

On April 13, 2018, TargetSmart contacted Catalist to assert that Catalist was using TargetSmart's proprietary information without consent.  [*Id*. at ¶ 65].  Catalist responded on April 19, 2018, certifying that it received proprietary information from GHP, that GHP never shared or distributed the information to other investors, and that it had destroyed the information. [*Id*. at ¶ 67-71].  It did not make the same representations about its CEO.  [*Id*. at ¶ 68].  Despite this denial, TargetSmart alleges that Catalist continues to use TargetSmart's proprietary information to take clients away from it.  [*Id*. at ¶¶ 79-81].

## C.   *Procedural Background*

TargetSmart filed suit against both GHP and Catalist on June 28, 2018.  [Dkt. No. 1].  In its original complaint, TargetSmart alleged that the agreement between GHP and Catalist, and their subsequent negotiations with TargetSmart, violated the Federal Defend Trade Secrets Act, 18 U.S.C. § 1836.  [Dkt. No. 1 at ¶ 67].  It also alleged that the Defendants had misappropriated trade secrets, violating both the Massachusetts Trade Secrets Act, the Massachusetts Unfair and Deceptive Practices Act, and Massachusetts common law, [*Id*. at ¶¶ 77-91, 128-133], and were liable for damages for unjust enrichment under Massachusetts common law.  [*Id*. at ¶¶ 115-121]. TargetSmart raised claims for breach of contract, breach of the

covenant of good faith and fair dealing, and fraudulent
misrepresentation by GHP, [*Id.* at ¶¶ 92-107, 122-27], and for
tortious interference with contract by Catalist. [*Id.* at
¶¶ 108-114].

On September 11, 2018, GHP filed an Answer, [Dkt. No. 12],
and Catalist filed its motion to dismiss for lack of
jurisdiction for failure to state a claim and on *forum non
conveniens* grounds. [Dkt. No. 15]. The same day, Catalist
filed a motion asking this court to admit its counsel, Attorneys
Adam S. Caldwell and Patrick J. Curran of Davis Wright Tremaine
LLP, *pro hac vice*. [Dkt. No. 14]. On September 17, 2018,
TargetSmart filed an opposition to the admission of Attorneys
Caldwell and Curran *pro hac vice* on the grounds that the law
firm had a conflict of interest and could not represent Catalist
consistent with its obligations under the Massachusetts Rules of
Professional Conduct. [Dkt. No. 19]. After a hearing, I
rejected TargetSmart's opposition to the proposed Catalist
counsel, and admitted Attorneys Caldwell and Curran *pro hac vice*
on December 10, 2018. [Dkt. No. 34].

Meanwhile, on October 2, 2018, TargetSmart filed its First
Amended Complaint. [Dkt. No. 22]. Though the factual
allegations in the two complaints were substantially identical,
in the First Amended Complaint, TargetSmart dropped its claim
for tortious interference of contract against Catalist and

instead added a claim for defamation. [Dkt. No. 22 at ¶¶ 142-147].

On October 16, 2018, GHP again submitted an Answer to the First Amended Complaint, [Dkt. No. 26], and Catalist again submitted a motion to dismiss for lack of jurisdiction and failure to state a claim and a memorandum in support thereof. [Dkt. No. 24; Dkt. No. 25]. On October 30, 2018, TargetSmart filed its opposition to the motion to dismiss. [Dkt. No. 29].

On October 25, 2018, a few days prior to filing its opposition, TargetSmart filed another motion to amend its complaint, in this instance to correct what was characterized as a scrivener's error. [Dkt. No. 28]. The motion indicated that Paragraph 61 of the First Amended Complaint mistakenly referred to GHP, instead of Catalist, and sought to correct that one word. [*Id*.]. Catalist filed an opposition to this motion to amend on November 6, 2018. [Dkt. No. 31]. I granted the motion on December 10, 2018, [Dkt. No. 34], and TargetSmart filed the Second Amended Complaint on December 13, 2018. [Dkt. No. 36].

Catalist thereafter again responded with a motion to dismiss or, in the alternative, to transfer, [Dkt. No. 38] on December 20, 2018. The memorandum in support of Catalist's suggested transfer of the case to the District of Columbia, but otherwise presented the same arguments regarding personal jurisdiction and failure to state a claim as the motion filed in

October 2018.  [*See generally* Dkt. No. 25; Dkt. No. 39].  On
January 4, 2019, GHP filed its opposition to Catalist's motion
to transfer, but took no position with regard to personal
jurisdiction or failure to state a claim.  [Dkt. No. 40].
TargetSmart submitted its opposition to the motion to dismiss on
January 11, 2019.  [Dkt. No. 41].

On January 23, 2019, I held a hearing on the present
motion, during which GHP for the first time indicated that it
would object to personal jurisdiction in the District of
Columbia if the case were to be transferred there in its
entirety.  It had not raised this objection or argued that it
would not be subject to the jurisdiction of the District of
Columbia in its original opposition to the motion to transfer.
[Dkt. No. 40].  TargetSmart indicated during the hearing that it
would not oppose a transfer of the case to the District of
Columbia if I found that personal jurisdiction over Catalist was
unavailable in the District of Massachusetts.

On January 30, 2019, GHP filed a supplemental opposition,
with leave of the court, to Catalist's motion to dismiss. This
opposition indicated only that GHP "did not waive its defenses
under F.R.C.P. 12(b)(1), (2) and (6)," but offered nothing by
way of factual assertion or legal argument about personal
jurisdiction in the District of Columbia.  [Dkt. No. 46 at 2].
On February 4, 2019, Catalist filed a letter with the court

indicating that its position had been adequately briefed in its

original memorandum, and that it had nothing further to add.

[Dkt. No. 48]. That same day, TargetSmart also filed a response

to GHP's Supplemental Opposition, arguing that its case against

GHP should not be transferred to the District of Columbia

because such a transfer would further delay TargetSmart's

ability to adjudicate the merits of its underlying claim. [Dkt.

No. 49 at 2]. Instead, TargetSmart argued that some kind of

coordination between the District of Massachusetts and the

District of Columbia should be fashioned for separate cases

against GHP (in Massachusetts) and Catalist (in the District of

Columbia).

## II. MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

### A.  *Specific Jurisdiction Over Catalist*

Catalist seeks to dismiss TargetSmart's complaint for lack

of personal jurisdiction over it in the District of

Massachusetts. [Dkt. No. 38]. Because Catalist is incorporated

in Delaware and has its principal place of business in the

District of Columbia, its contacts with Massachusetts are not

"so continuous and systematic as to render [it] essentially at

home in [Massachusetts]," and allow this court to exercise

general jurisdiction over it. *Goodyear Dunlop Tires Operations*

*S.A.* v. *Brown*, 564 U.S. 915, 919, 131 S. Ct. 2846, 2851 (2011).

Consequently, I may only exercise personal jurisdiction

over Catalist if its contacts with Massachusetts gave rise to the present claims *and* are sufficient to say that Catalist was "present" in the state such that "the maintained of [this] suit does not offend traditional notions of fair play and substantial justice." *International Shoe Co.* v. *Washington Office of Unemployment Compensation*, 326 U.S. 310, 316 (1945). In making this determination, "the plaintiff has the burden of showing that jurisdiction exists." *Ealing Corp.* v. *Harrods Ltd.*, 790 F.2d 978, 979 (1st Cir. 1986). In the absence of an evidentiary hearing, TargetSmart must "make[ ] a *prima facie* showing of jurisdiction supported by specific facts alleged in the pleadings, affidavits, and exhibits." *Id.*

To meet this burden, TargetSmart must allege specific facts to "satisfy two conditions: first, that the forum in which the federal district court sits has a long-arm statute that purports to grant jurisdiction over the defendant; and second, that the exercise of jurisdiction pursuant to that statute comports with the structure of the Constitution." *Foster-Miller, Inc.* v. *Babcock & Wilcox Canada*, 46 F.3d 138, 144 (1st Cir. 1995); *see also Knox* v. *MetalForming, Inc.*, --F.3d--, 2019 WL 364021 at *3 (1st Cir. Jan. 30, 2019) ("[T]he plaintiffs' burden is to proffer evidence sufficient to support findings of all facts essential to personal jurisdiction without relying on unsupported allegations.") (internal quotations omitted).

I will address each of these two requirements in turn.

1.   The Massachusetts Long-Arm Statute

First, I consider whether Massachusetts state law would permit the exercise of jurisdiction over Catalist.  The Massachusetts long-arm statute allows a court of the Commonwealth to

> exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action in law or equity arising from the person's: (a) transacting any business in this commonwealth . . . (c) causing tortious injury by act or omission in this commonwealth; [or] (d) causing tortious injury in this commonwealth by act or omission outside this commonwealth if he regularly does or solicits business . . . in this commonwealth.

M.G.L. c. 223A § 3.

Historically, both the First Circuit and the Supreme Judicial Court have interpreted "the Commonwealth's long-arm statute as coextensive with the outer limits of the Constitution." *A Corp.* v. *All American Plumbing, Inc.*, 812 F.3d 54, 59 (1st Cir. 2016); *see also Good Hope Industries* v. *Ryder Scott Co.*, 389 N.E.2d 76, 79 (Mass. 1979).  However, recently, both courts have moved away from this interpretation and instead have suggested that "the Massachusetts statute does not purport to extend jurisdiction as far as due process would allow." *SCVNGR, Inc.* v. *Punchh, Inc.*, 85 N.E.3d 50, 55 (Mass. 2017); *see also A. Corp*, 812 F.3d at 59.

Consequently, the exercise of jurisdiction is only proper if it is consistent with one of the "enumerated eight specific

grounds on which a nonresident defendant may be subjected to personal jurisdiction by a court of the Commonwealth." *SCVNGR, Inc.*, 85 N.E.2d at 55. Under the statute, there are two possible avenues through which this court may exercise jurisdiction over Catalist. First, since GHP's transactions with TargetSmart took place, at least in part, in the Commonwealth and gave rise to this cause of action, I may exercise jurisdiction over Catalist if GHP is an agent of Catalist under Massachusetts law. *See* M.G.L. c. 223A § 3(a). Second, I may exercise jurisdiction if Catalist's transactions with TargetSmart fall within the scope of the "transacting any business" prong of the long-arm statute. M.G.L. c. 223A § 3.

   *a.   GHP as an agent of Catalist*

As a preliminary matter, GHP has not objected to the court's exercise of personal jurisdiction, beyond a blanket denial to TargetSmart's assertion of jurisdiction. [Dkt. No. 26 at ¶ 6]. Because it is headquartered in Boston, GHP certainly transacts business within the Commonwealth, [Dkt. No. 36 at ¶ 3], and at least some part of TargetSmart's claims arise out of its transactions and meetings with GHP in the Commonwealth. [*See e.g.*, *id.* at ¶¶ 31-40]. As a result, jurisdiction over Catalist under the long-arm statute is proper if GHP was acting

as Catalist's agent when transacting business with TargetSmart.[1]

Under Massachusetts law, "[a]n agency relationship is created when there is mutual consent, express or implied, that the agent is to act on behalf and for the benefit of the principal, and subject to the principal's control." *Theos & Sons, Inc.* v. *Mack Trucks, Inc.*, 729 N.E.2d 1113, 1119 (Mass. 2000). "The essence of the principal-agent relationship is the right of power or control by the alleged principal over the conduct of the alleged agent." *Commonwealth Aluminum Corp.* v. *Baldwin Corp.*, 980 F. Supp. 598, 611 (D. Mass. 1997).

Though an agency relationship may be formed by express consent of the parties, evidenced by a writing, it need not be. It may also be implied from "conduct by the principal which causes a third person reasonably to believe that a particular person has authority to enter into negotiations or to make representations as his agent." *DeVaux* v. *American Home Assurance Co.*, 444 N.E.2d 355, 358 (Mass. 1983)(internal quotations and citations omitted); *see also Hudson* v. *Massachusetts Property Insurance Underwriting Ass'n*, 436 N.E.2d

_____

[1] The Letter Agreement between GHP and Catalist forms the basis of the relationship between these two parties. [Dkt. No. 39-1, Exhibit 1, GHP Engagement Letter (hereinafter "Letter Agreement")]. This agreement specifies that it "shall be governed by, and construed and enforced in accordance with, the laws of the Commonwealth of Massachusetts." [*Id.* at 6]. The question of whether GHP is an agent of Catalist will therefore also be governed by Massachusetts law.

155, 159 (Mass. 1982). Importantly, an implied agency relationship can only be formed because of "some direct intervention by the principal." *Commonwealth Aluminum Corp.*, 980 F. Supp. at 611. It is not enough for the *agent* to make representations to a third party in the absence of the principal.

Here, there is no indication that the Letter Agreement between GHP and Catalyst that formed the basis of their contractual relationship empowered GHP to act as Catalyst's agent. [*See* Dkt. No. 39-1, Exhibit 1, GHP Engagement Letter (hereinafter "Letter Agreement")]. Though the agreement stated that GHP would provide Catalist "with financial advice and assistance" and gave Catalist the authority to determine the objectives and strategies used to approach TargetSmart, [*Id*. at p. 2, § 2], the agreement specifically characterized GHP as an "independent contractor" and not an "employee or agent" of Catalist. [*Id*. at p. 4, § 6]. It also does not subject GHP to control by Catalist, [*See id.* at p. 2, § 2 ("In connection with this engagement, GHP will provide [Catalist] with financial advice and assistance . . . including, as *mutually* determined to be appropriate . . ." (emphasis added))], even if GHP is obligated to "keep [Catalist] informed of the activities undertaken by GHP" in connection with the Letter Agreement. [*Id.* at p. 4, § 6]. The Letter Agreement, therefore, does not

evidence an intent by either Catalist or GHP to form an agency relationship.

There is also no allegation in the complaint that *Catalist* made any representations to TargetSmart that GHP was acting as its agent.  Indeed, though TargetSmart knew that GHP was acting to further the interests of another party, [Dkt. No. 36 at ¶ 24], it did not discover that GHP was, in fact, working with Catalist until March, 2018, when the transaction fell through. [*Id*. at ¶¶ 52-53].  Thus, there is nothing in the complaint to indicate Catalist took any action to cause TargetSmart to believe that GHP was acting on its behalf.  Consequently, I cannot imply an agency relationship between GHP and Catalist, and Catalist is not otherwise "estopped from denying the agency is authorized."  *Hudson*, 436 N.E.2d at 159.

Since the record before me does not support the proposition GHP is an agent of Catalist under Massachusetts law, GHP's contacts with Massachusetts cannot form the basis for the exercise of jurisdiction as to Catalist under the Massachusetts long-arm statute.

   b.   *"Transacting any business in this Commonwealth"*

Catalist may alternatively be held to have submitted to jurisdiction in this Court under the Long Arm Statute if the cause of action arose from its "transacting business in this commonwealth."  M.G.L. c. 223A § 3(a).  "Both federal and state

courts have regularly construed the 'transacting any business'
language of the statute in a generous manner." *United
Electrical, Radio, and Machine Workers of America* v. *163
Pleasant Street Corp.*, 960 F.2d 1080, 1087 (1st Cir. 1992).  The
relevant inquiry is not whether the defendant has a physical
presence in Massachusetts, but whether "the defendant attempted
to participate in the commonwealth's economic life." *Id.; see
also Diamond Group, Inc.* v. *Selective Distribution Int'l Inc.*,
998 N.E.2d 1018, 1022 (Mass. App. Ct. 2013) ("The section uses
the word 'any' before the word 'business.'  We interpret that
term to be expansive, or to mean that the volume of business
need not be substantial but merely definite and perceptible.").
Even mailing letters to the Commonwealth to solicit business may
be sufficient to satisfy this threshold standard.  *Id.* (citing
*Hahn* v. *Vermont Law School*, 698 F.2d 48 (1st Cir. 1983); *Nova
Biomedical Corp.* v. *Moller*, 629 F.2d 190 (1st Cir. 1980)).

    Here, at least a part of TargetSmart's claims against
Catalist were based on, and arose as a result of, Catalist's
relationship with GHP, embodied in the Letter Agreement.  [*See
generally*, Dkt. No. 36 at ¶¶ 82-122; Dkt. No. 39-1, Letter
Agreement].  Since the Letter Agreement is governed by the laws
of Massachusetts, [Dkt. No. 39-1, Letter Agreement at p. 6,
§ 15] and was at least partly negotiated and signed in
Massachusetts, it evidences Catalist's intent to "participate in

the commonwealth's economic life," *United Electrical*, 960 F.2d 1087, and is sufficient to constitute business transactions in the Commonwealth within the scope of the long-arm statute. *See Carlson Corp.* v. *University of Vermont*, 402 N.E.2d 483, 485 (Mass. 1980).

Consequently, the Massachusetts long-arm statute permits this Court's exercise of personal jurisdiction over Catalist.

## 2. Constitutional Limits on Personal Jurisdiction

Though necessary, compliance with the long-arm statute is not sufficient in itself to render personal jurisdiction proper in this court. TargetSmart must still show that "the exercise of jurisdiction pursuant to that statute comports with the structure of the Constitution." *Foster-Miller, Inc.*, 46 F.3d at 144. In other words, it must show that Catalist has sufficient minimum contacts with the state to allow for the exercise of personal jurisdiction consistent with due process. *International Shoe*, 326 U.S. at 316. TargetSmart has two avenues through which to satisfy this constitutional standard. First, it may show that GHP has sufficient contacts with the forum state, and that GHP's contacts may be imputed to Catalist by virtue of the contractual relationship between the parties. Alternatively, it may show that Catalist itself independently satisfies the minimum contacts test.

### a. Imputing GHP's Contacts

The First Circuit has consistently recognized that a plaintiff "may rely in whole or in part on actions imputed to [the defendant] through its agents." *Jet Wine & Spirits, Inc* v. *Bacardi & Co., Ltd.*, 298 F.3d 1, 7 (1st Cir. 2002); *see also Weinberger* v. *Grand Circle Travel, LLC*, 891 F. Supp. 2d 228, 240 (D. Mass. 2012) ("For purposes of personal jurisdiction, the actions of an agent may be attributed to the principal."). Indeed, the First Circuit has indicated that it is generally unconcerned with "[t]he exact type of agency relationship used to impute contacts," or with "technical differences between the states' different rules of agency." *Jet Wine*, 298 F.3d at 7-8.

Instead, the touchstone has been the question of control: the First Circuit has primarily been concerned with whether the relationship was "sufficient" to attribute the contacts of the agent to the principal "for the purpose of reaching the [principal] under the Massachusetts long-arm statute as cabined by the Due Process Clause of the Fourteenth Amendment." *Daynard* v. *Ness, Motley, Loadholt, Richardson & Poole, PA*, 290 F.3d 42, 53 (1st Cir. 2002). "If the plaintiff cannot show that the association [or agency relationship] substantially influenced the decisionmaking leading to the [defendant's] in-forum activities, then there can be no attribution." *Donatelli* v. *National Hockey League*, 893 F.2d 459, 469 (1st Cir. 1990).

Courts in this circuit have been willing to impute contacts
from one defendant to the other when there was a formal, written
agreement between the parties that, at most, "[fell] slightly
outside of the confines of a partnership, joint venture, or
other agency relationship," but was similar enough "under the
Due Process Clause to permit the exercise of jurisdiction."
*Weinberg*, 891 F. Supp. 2d at 241-44 (declining to impute
contacts to a foreign defendant from a domestic one, which
served as a travel agent and sold tickets on behalf of the
foreign defendant on the basis that there was not a sufficiently
close relationship for imputation to be consistent with Due
Process); *see also Daynard*, 290 F.3d at 53 (allowing contacts to
be imputed because the plaintiff understood the two defendants
to be involved in a joint venture, and because the defendants
consistently held themselves out as joint venturers);
*Donatelli*, 893 F.2d at 469 (allowing contacts to be imputed to
the nonresident defendant, an unincorporated association, from
the resident defendant, a member of the association, if the
plaintiff could show that the association had a substantial
influence on its member's decisionmaking); *Jet Wine*, 298 F.3d at
8 (allowing contacts to be imputed because the non-resident
defendant assumed the contractual obligations of the resident
defendant, including all liabilities arising out of a
transferred business at issue in this case).

In the absence of a formal agreement establishing an agency relationship between Catalist and GHP or some other contractual agreement establishing a similar formal association between the two, I conclude I cannot impute GHP's contacts with Massachusetts to Catalist. A review of the Letter Agreement does not demonstrate that the two defendants contemplated Catalist exercising the kind of formal control or influence that would be needed to render their relationship akin to a joint venture, partnership, or other agency relationship. *See supra;* [Dkt. No. 39-1, Letter Agreement].

TargetSmart cannot, therefore, rely on GHP's contacts with Massachusetts to show that Massachusetts has personal jurisdiction over Catalist.

b. *Minimum Contacts*

This court may only exercise personal jurisdiction over Catalist, then, if Catalist has sufficient contacts with Massachusetts to render the exercise of jurisdiction reasonable. To determine whether it is, I must consider three factors:

> First, the claim underlying the litigation must directly
> arise out of, or relate to the defendant's forum-state
> activities. Second, the defendant's in-state contacts must
> represent a purposeful availment of the privilege of
> conducting activities in the forum state, thereby invoking
> the benefits and protections of that state's laws and
> making the defendant's involuntary presence before the
> state's courts foreseeable. Third, the exercise of
> jurisdiction must, in light of the Gestalt factors, be
> reasonable.

*Foster-Miller, Inc.*, 46 F.3d at 144; *see also Knox*, --F.3d--,
2019 WL 364021 at *4 (outlining the three factors of
relatedness, purposeful availment, and reasonableness).

i. Relatedness

For the exercise of jurisdiction to be consistent with Due
Process, the "claim underlying the litigation must directly
arise out of, or relate to, the defendant's forum-state
activities." *Daynard*, 290 F.3d at 61 (citing *Foster-Miller,
Inc.*, 46 F.3d at 144). To show relatedness, the plaintiff "must
show a demonstrable nexus between the plaintiff's claims and the
forum-based activities such that the litigation itself is
founded directly on those activities." *Weinberg*, 891 F. Supp.
2d at 244.

TargetSmart's assertion that this court has personal
jurisdiction over Catalist runs into trouble at the threshold.
It is difficult to see what actions of significance, if any,
Catalist took in the Commonwealth of Massachusetts. Its meeting
with TargetSmart and GHP took place in Washington, D.C., [Dkt.
No. 36 at ¶ 50], and any further contact with TargetSmart, as
well as its alleged misuse of confidential information, appear
also to have taken place in the District of Columbia, in light
of the fact that it is headquartered there. [*Id.* at ¶¶ 65-74].
It is unclear where the reporters and clients who inquired about
potential transactions were located, or where any alleged

misrepresentations or defamatory statements by Catalist were
made.  [*Id*. at ¶¶ 41-48, 75-80].  Importantly, Catalist was not
present at, or involved in GHP's initial meeting with
TargetSmart in Boston in December 2017.  [*Id*. at ¶¶ 31-33].

The only contact that Catalist clearly had with the
Commonwealth of Massachusetts was its relationship with GHP.
[Dkt. No. 39-1, Letter Agreement].  But it is difficult to say
that this litigation is "founded directly on" that relationship
and the Letter Agreement, even if they together provide context
and explanation for how Catalist was able to access
TargetSmart's trade secrets.  *See Weinberg*, 891 F. Supp. 2d at
244.  This is especially true since GHP is not an agent of
Catalist, and Catalist did not retain enough control over GHP
for this contractual relationship to support Catalist's
relationship to the forum state.

The litigation is therefore not sufficiently related to
Catalist's contacts with the Commonwealth of Massachusetts,
exercise of personal jurisdiction in this court is inappropriate
on lack of relatedness grounds.

ii. Purposeful Availment

Even if the litigation was "founded directly on" the Letter
Agreement and the relationship between Catalist and GHP, the
record does not demonstrate that Catalist purposefully availed
itself "of the privilege of doing business" in Massachusetts.

25

*Jet Wines*, 298 F.3d at 11.  "The purposeful availment requirement ensures that the exercise of jurisdiction [by the forum] is essentially voluntary and foreseeable, . . . and is not premised on a defendant's random, fortuitous, or attenuated contacts" with the forum state."  *Knox*, --F.3d--, 2019 WL 364021 at *4 (internal citations and quotations omitted).  To satisfy this aspect of minimum contacts, the defendant's conduct must evidence "something more" than the "regular flow [of commerce] or regular course of sales" into the forum state.  *Id.* at *5.  There must be some action taken by the defendant that is specifically directed to, or establishes a direct link with, the Commonwealth of Massachusetts.  *See Id.* at *6.

This condition also is not met here.  Catalist certainly could reasonably foresee being hailed into court in Boston to defend against litigation with GHP over a breach of the Letter Agreement.  [*See generally*, Dkt. No. 39-1, Letter Agreement].  However, Catalist's relationship with TargetSmart was centered in the District of Columbia.  Even though it voluntarily engaged GHP, Catalist did not engage in a "voluntary act" in the Commonwealth of Massachusetts from which it was liable to suit *by TargetSmart* in Massachusetts; nor did its conduct *vis a viv* TargetSmart establish a direct link with Massachusetts.  This is especially true since GHP was not Catalist's agent and GHP was not involved in a joint venture, partnership, or similar

26

relationship with Catalist. *See supra*. It served only as an independent advisor and consultant. [Dkt. No. 39-1, Letter Agreement at 4, § 6].

TargetSmart does not allege any other action that would directly tie Catalist to Massachusetts, and instead rests its argument entirely on the fact that Catalist hired GHP as an agent. [Dkt. No. 29 at 10]. As I have already rejected this argument, I do not see how else Catalist has purposefully availed itself of the laws of Massachusetts.

### iii. Reasonableness

Finally, the First Circuit directs me to consider the Gestalt factors, which include:

> (1) the defendant's burden of appearing, (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the judicial system's interest in obtaining the most effective resolution of the controversy, and (5) the common interests of all sovereigns in promoting substantive social policies.

*Foster-Miller, Inc.*, 46 F.3d at 150.

I consider these factors briefly. First, Catalist is based in Washington, D.C., and though GHP is headquartered in Boston, allowing the case to go forward in Boston as opposed to the District of Columbia places a greater burden on Catalist and similarly on TargetSmart, which seems indifferent to this burden, having initially chosen the District of Massachusetts as

the forum for resolving this dispute.  [Dkt. No. 36 at ¶¶ 3-4;
Dkt. No. 39 at 16-17].

Second, Massachusetts has an interest in adjudicating
disputes relating to its citizens, [Dkt. No. 36 at ¶ 3], and
arising under its laws.  [*Id*. at ¶¶ 100-106, 136-141].  It does
not, however, necessarily have a strong interest in adjudicating
disputes between foreign parties, [*Id*. at ¶¶ 1, 2, 4].  Nor does
its interest in adjudicating disputes relating to its citizens
outweigh the fact that the majority of the events of
significance underlying the dispute took place in the District
of Columbia and outside the borders of the Commonwealth of
Massachusetts.  [*See generally* Dkt. 22 at ¶¶ 41-80].  For the
same reason, the fifth factor counsels against exercising
personal jurisdiction in Massachusetts, especially since
Massachusetts law would not apply to TargetSmart's pendent
state-law claims under the Commonwealth's own choice of law
analysis.[2]

---

[2] The question of which law applies to TargetSmart's pendent
state-law claims against Catalist has three distinct dimensions
here, because TargetSmart has brought three kinds of state law
claims against Catalist – claims under the common law of torts,
claims under the common law of contracts, and claims under
Massachusetts statutory law.

 Massachusetts choice-of-law principles provide that the
"[d]isposition of the substantive choice of law issues in tort
'turns on the law of the jurisdiction which has the strongest
interest in the resolution of the particular issue presented.'"
*Graham* v. *Malone Freight Lines, Inc.*, 948 F. Supp. 1124, 1131
(D. Mass. 1996) (citing *Pevoski* v. *Pevoski*, 358 N.E.2d 416

(Mass. 1976)). Though the law of the place where the injury
occurred presumptively applies, this presumption may be overcome
if another state has a more significant relationship to the
case. *See Cosme* v. *Whitin Mach. Works, Inc.*, 632 N.E.2d 832,
835 (Mass. 1994); *Dagi* v. *Delta Air Lines, Inc.*, --F. Supp. 3d--
, 2018 WL 6506074 at *7 n. 6 (D. Mass. Dec. 11, 2018). Here,
the wrong alleged likely took place in the District of Columbia,
where Catalist is headquartered. TargetSmart has not indicated
why Massachusetts would have a stronger interest than the
District of Columbia in the resolution of the dispute.

TargetSmart also has brought a claim for unjust enrichment
against Catalist, a claim which in Massachusetts sounds in
contract rather than in tort. *Salamon* v. *Terra*, 477 N.E.2d
1029, 1031 (Mass. 1985); *see also Massachusetts Eye and Ear
Infirmary* v. *QLT Phototherapy*, 552 F.3d 47, 57 (1st Cir. 2009).
Massachusetts choice-of-law principles for contract govern,
requiring a forum court to look to the "law of the place of the
making," but also to "various choice-influencing considerations"
to determine which state has the strongest interest in the
underlying dispute. *Graham*, 948 F. Supp. at 1131 (citing
*Bushkin Associates, Inc.* v. *Raytheon Co.*, 473 N.E.2d 662, 668-69
(Mass. 1985)). These considerations include "(a) the place of
contracting, (b) the place of negotiation of the contract,
(c) the place of performance, (d) the location of the subject
matter of the contract, and (e) the domicil[*sic*], residence,
nationality, place of incorporation, and place of business of
the parties." *Bushkin Associates, Inc.*, 473 N.E.2d at 669. All
of these considerations point to the District of Columbia,
rather than Massachusetts, as the forum with the greatest
interest in adjudicating the dispute between TargetSmart and
Catalist sounding in contract.

Finally, TargetSmart asserts two statutory claims – under
M.G.L. c. 93 §§ 42 and 42A, and under M.G.L. c. 93A §§ 2 and 11
– against Catalist under Massachusetts law. However, both
statutes are limited in scope and apply only to "any course of
conduct, pattern of activity, or activities [that] occur and
have their competitive impact primarily and predominantly within
the commonwealth." M.G.L. c. 93 § 3; *see also* M.G.L. c. 93A
§ 11 (requiring that "the actions and transactions constituting
the alleged unfair method of competition or the unfair or
deceptive act or practice [that] occurred primarily and
substantially within the commonwealth."). Since TargetSmart has
not alleged that Catalist's violations of the two statutes took
place in Massachusetts, Massachusetts statutory law does not
appear to apply.

The third and fourth factors both weigh in favor of having the claims against GHP and the claims against Catalist heard together. Both sets of claims arise out of the same factual circumstances and rest on the same allegations. However, these factors do not suggest that Boston is a more appropriate place to hear the case than Washington, D.C., and instead counsel in favor of transferring the dispute to the District of Columbia, if personal jurisdiction against Catalist does not otherwise lie in Massachusetts.

       *c. Conclusion*

The three factors set forth in *Foster-Miller, Inc.* v. *Babcock & Wilcox Canada*, 46 F.3d 138 (1st Cir. 1995), all indicate that the exercise of personal jurisdiction as to Catalist by this court would be improper under the Due Process Clause.

Lacking personal jurisdiction over the entire dispute, but bearing in mind the need for judicial efficiency and seeking the prompt resolution of the matter in its entirety, I turn to consider the question whether to transfer the case to the District of Columbia, rather than dismiss it.

**B.    Transfer under Section 1631 or Section 1406(a)**

Even though this court does not have jurisdiction to hear and adjudicate the claims at issue in this case against Catalist, I may still order the case to be transferred, rather

than dismissed outright, if the case could properly have been brought in the putative transferee court – here, the District of Columbia. Because I find that the District of Columbia has both subject matter and personal jurisdiction over the pending matter and all the parties, I will transfer the case to the District of Columbia, rather than dismissing it.

Federal law allows a court "that finds that there is a want of jurisdiction . . . if it is in the interest of justice, [to] transfer [the case] to any other such court in which the action . . . could have been brought at the time it was filed or noticed." 28 U.S.C § 1631. The First Circuit has interpreted this provision to establish a presumption in favor of transfer – rather than dismissal – when the forum court lacks personal jurisdiction over one of the defendants. *See Federal Home Loan Bank of Boston* v. *Moody's Corp.*, 821 F.3d 102, 119 (1st Cir. 2016), *abrogated on other grounds*, *Lightfoot* v. *Cendant Mortgage Corp.*, 137 S. Ct. 553 (2017). The statutory text, the First Circuit held, "does not further delineate whether 'jurisdiction' is meant to refer to subject matter jurisdiction, personal jurisdiction, or both." *Federal Home Loan Bank*, 821 F.3d at 114. There is therefore no reason to restrict the statute's scope only to subject matter jurisdiction, as courts in the circuit appear, with the benefit of hindsight, erroneously to have done in the past. *See, e.g.*, *Pedzewick* v. *Foe*, 963 F.

Supp. 48, 50 (D. Mass. 1997) ("This Court agrees with the line of cases limiting section 1631 to transfer for lack of subject matter jurisdiction only.").

Similarly, 28 U.S.C. § 1406(a) allows me to "transfer [a] case to any district or division in which it could have been brought" if it "lay[s] venue in the wrong division or district" and transfer is "in the interest of justice." 28 U.S.C. § 1406(a). Though this provision does not explicitly mention jurisdiction, the Supreme Court has interpreted its mandate to "authorize transfer of cases, however wrong the plaintiff may have been in filing his case as to venue, whether the court in which it was filed has personal jurisdiction over the defendants or not." *Goodlawr, Inc.* v. *Heiman*, 369 U.S. 463, 466 (1962); *see also Pedzewick*, 963 F. Supp. at 50 ("Section 1406(a) applies in cases where venue improper [*sic*]. It has also been interpreted to permit transfer for lack of personal jurisdiction.").

Consequently, since this court lacks personal jurisdiction over Catalist, I may transfer this case under either 28 U.S.C. § 1631 or under 28 U.S.C. § 1406(a) if it is in the "interest of justice." As a general matter, the First Circuit has held that the phrase "in the interest of justice" establishes "a presumption – albeit a rebuttable one – in favor of transfer." *Britell* v. *United States*, 318 F.3d 70, 73 (1st Cir. 2003). The

presumption may be rebutted if the record, taken as a whole, indicates that "the administration of justice would be better served by dismissal." *Id*. at 74.

Based on the record before me, there is no indication that dismissal, rather than transfer, would facilitate the speedy and efficient resolution of this case. The core of TargetSmart's claims against Catalist and GHP is not "fanciful or frivolous" such that "it is in the interest of justice to dismiss [the entire case] rather than keep it on life support (with the inevitable result that the transferee court will pull the plug)." *Id*. at 75. A transfer to the District of Columbia would allow the claims to move forward in a location with proper jurisdiction over all parties. Finding nothing on the record to rebut the presumption in favor of transfer, I am prepared to transfer the case to the District of Columbia pursuant to my authority under both 28 U.S.C. § 1631 and 28 U.S.C. § 1406(a).

## *C.  TargetSmart's Request for Limited Discovery*

Finally, I will briefly address an argument made by TargetSmart in its opposition to the Catalist motion to dismiss. [Dkt. No. 41 at 12-13]. There, TargetSmart argues that, if there is ambiguity regarding the relationship between Catalist and GHP, "the Court should . . . allow TargetSmart to take limited jurisdictional discovery." [*Id*.]. This argument is ultimately meritless.

33

The First Circuit has held that "a diligent plaintiff who sues an out-of-state corporation and who makes out a colorable case for the existence of *in personam* jurisdiction *may* well be entitled to a modicum of jurisdictional discovery if the corporation interposes a jurisdictional defense." *United States* v. *Swiss American Bank, Ltd.*, 274 F.3d 610, 625 (1st Cir. 2001). However, the decision to allow jurisdictional discovery requires that the plaintiff does, in fact, "present[ ] a colorable case for personal jurisdiction by proffering evidence that has a strong bearing on the question of jurisdiction" and show that "additional clarity is needed." *Mullally* v. *Sunrise Senior Living Management, Inc.*, 224 F. Supp. 3d 117, 123 (D. Mass. 2016). Ultimately, the decision about whether to grant jurisdictional discovery falls within my discretion. *Swiss America Bank, Ltd.*, 274 F.3d at 626.

Given the state of the record, I will not allow jurisdictional discovery here. There is no ambiguity that GHP was not acting as an agent of Catalist; TargetSmart has not made a colorable argument that it was. TargetSmart has also given no clear indication of what it expects, or even hopes, to uncover through this process that would shed further light on the claims in its complaint.

Therefore, I will not authorize further discovery on the question of personal jurisdiction. I note that, at this stage,

TargetSmart says it wants to move forward to the merits of the case as soon as possible, [Dkt. No. 49 at 2], and seems to have abandoned any interest in engaging in further preliminary skirmishes such as jurisdictional discovery.

### III. TRANSFER OF VENUE TO THE DISTRICT OF COLUMBIA

Catalist has in fact moved, as an alternative to dismissal, to transfer this case, either in its entirety or simply with respect to TargetSmart's claims against it, to the District of Columbia under 28 U.S.C. § 1404(a). [*See* Dkt. No. 38]. TargetSmart, [Dkt. No. 41 at 13-15], and GHP, [Dkt. No. 40], both initially objected to the transfer, arguing that the District of Massachusetts is the appropriate forum for this case: GHP is headquartered in Boston, [Dkt. No. 36 at ¶ 6], and its conduct largely took place in Boston. Consequently, they have argued, the center of gravity for the case is in the District of Massachusetts, meaning the case is properly before this court. However, TargetSmart has also indicated that it would consent to a transfer if I found that I lacked jurisdiction to hear its claims against Catalist, as I have done here.

In seeking a transfer, Catalist specifically invokes my authority under 28 U.S.C. § 1404(a), which presumes that I have jurisdiction to hear the case, but nevertheless allows me to transfer the case to another district "[f]or the convenience of

the parties and witnesses, in the interest of justice." 28

U.S.C. § 1404(a). Consequently, I may exercise my authority

under 28 U.S.C. § 1404(a) to transfer the case against GHP to

the District of Columbia based on a determination that

jurisdiction in the District of Columbia is appropriate and that

it is in the interest of justice to have TargetSmart's claims

against both GHP and Catalist heard together. I will use the

obligation to address Catalist's section 1404(a) contention to

discuss the similar approach I find appropriate to support

transfer under either § 1631 or § 1406(b).

**A.** ***Jurisdiction is Proper in the District of Columbia***

As with 28 U.S.C. § 1631 and 28 U.S.C. § 1406(a), transfer

under section 1404(a) is only appropriate if the District of

Columbia has both subject matter and personal jurisdiction over

the pending matter and the parties. Both these conditions are

met here. The United States District Court for the District of

Columbia, like this court, has federal question jurisdiction

under 28 U.S.C. § 1331 over the federal claim, *see* 18 U.S.C.

§ 1836 (providing a private right of action for violations of

the Federal Defense of Trade Secrets Act), and can therefore

exercise supplemental jurisdiction over any pendent state-law

claims.[3]

---

[3] Under 28 U.S.C. § 1367(a), a district court may exercise
"supplemental jurisdiction over all other claims that are so

The District of Columbia also has personal jurisdiction over all the parties in this suit. Both TargetSmart and Catalist are headquartered in the District of Columbia; as a consequence, the District of Columbia may exercise general jurisdiction over both parties. *See Goodyear Dunlop*, 564 U.S. at 919; [Dkt. No. 36 at ¶¶ 1, 4].

Though headquartered in Boston, GHP is also subject to personal jurisdiction in the District of Columbia. To be sure, during the most recent hearing on January 23, 2019, GHP indicated that it would contest personal jurisdiction in the District of Columbia. However, GHP did not raise any reasoned argument relating to personal jurisdiction in its January 30, 2019 opposition to the motion to transfer. [*See generally*, Dkt. No. 40; Dkt. No. 46]. Instead, its opposition has focused on both the location of its documentary record, [Dkt. No. 40 at 3], and on the fitness of the federal court in the District of Columbia to decide questions of Massachusetts state law. [Dkt.

related to claims in the action within [the district court's] original jurisdiction that they form part of the same case or controversy under Article III." 28 U.S.C. § 1367(a). In cases, like this, where the court's original jurisdiction is based on 28 U.S.C. § 1331, "[p]endent jurisdiction, in the sense of judicial power, exists whenever there is a claim arising under" the laws of the United States "and the relationship between that claim and the state claim permits the conclusion that the entire action before the court compromises one case." *United Mine Workers of America* v. *Gibbs*, 383 U.S. 715, 725 (1966); *see also Exxon Mobile Corp.* v. *Allapattah Services, Inc.*, 545 U.S. 546, 558 (2005).

No. 46 at 2].  Both issues are addressed below.  Moreover, since GHP has raised a bare objection, even if it has offered nothing to substantiate it, I will briefly address the question whether the District of Columbia has personal jurisdiction over GHP based on the record before me.

The District of Columbia long-arm statute closely tracks the Massachusetts long-arm statute and authorizes the exercise of personal jurisdiction over any person "transacting any business in the District of Columbia."  D.C. CODE § 13-423.  "The 'transacting business' provision 'of the long-arm statute has been interpreted to be coextensive with the Constitution's due process limit.'"  *Pierce* v. *Mattis*, 256 F. Supp. 3d. 7, 11 n. 3 (D.D.C. 2017) (citing *First Chicago Int'l* v. *United Exchange Co.*, *Ltd*, 836 F.2d 1375, 1377 (D.C. Cir. 1988)).

GHP has sufficient "minimum contacts" with the District of Columbia for exercise of personal jurisdiction to be consistent with "traditional notions of fair play and substantial justice." *International Shoe*, 326 U.S. at 316.  GHP intentionally initiated contact with TargetSmart, a corporation headquartered in the District of Columbia, [Dkt. No. 36 at ¶ 24], and participated in several conversations and meetings with both TargetSmart and Catalist, both of which were headquartered in Washington, D.C. [*See generally, id.*].  In particular, the March 14, 2018 meeting, where TargetSmart learned that one of

Catalist's funders had broken the NDA, took place in Washington, D.C. [*Id*. at ¶¶ 49-53]. Consequently, GHP could reasonably foresee being called into court in the District of Columbia to respond to claims arising out of its transactions with Catalist and TargetSmart. *Cf*. *World-Wide Volkswagen Corp.* v. *Woodson*, 444 U.S. 286 (1980).

The case therefore as a matter of personal jurisdiction could have been brought against GHP in the District of Columbia, and I will allow a transfer if the conditions set forth by section 1404(a) are met.

## B.    *Transfer under Section 1404(a)*

28 U.S.C. § 1404(a) permits a federal court "[f]or the convenience of parties and witnesses, in the interest of justice" to transfer a civil action "to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). This provision gives district courts discretion to transfer cases that are properly before them when "trial in the chosen forum would establish oppressiveness and vexation to a defendant out of all proportion to the plaintiff's convenience or when the chosen forum is inappropriate because of considerations affecting the courts own administrative and legal problems." *Piper Aircraft Co.* v. *Reyno*, 454 U.S. 235, 241 (1981). Because the statute presumes that the transferor court is competent to hear the case, transfer under § 1404(a) does not

result in a change in the substantive law governing the case.
*Id.* at 253-54.  I note, however, that Massachusetts choice-of-
law principles would appear to anticipate application of
District of Columbia substantive law.  *See supra* note 2.

In recent years, the Court has refined its approach by
holding that § 1404(a) is designed to codify the common-law
doctrine of *forum non conveniens*, and so can be invoked before a
court has resolved "whether it has authority to adjudicate the
cause (subject-matter jurisdiction) or personal jurisdiction
over the defendant if [the court] determines that, in any event,
a foreign tribunal is plainly the more suitable arbiter of the
merits of the case." *Sinochem Int'l* v. *Malaysia Int'l Shipping*,
549 U.S. 422, 425 (2007); *see also Atlantic Marine Construction
Co., Inc.* v. *United States District Court for the Western
District of Texas*, 571 U.S. 49, 60, 134 S. Ct. 568, 580 (2013).

However, the Court has not withdrawn from the approach of
treating § 1404 transfer as discretionary.  Indeed, the Court
has held that, in the context of transfer under § 1404(a) – as
contrasted with dismissal for *forum non conveniens* - "[t]he
doctrine leaves much to the discretion of the court to which the
plaintiff resorts," although "unless the balance is strongly in
favor of the defendant, the plaintiff's choice of forum should
rarely be disturbed." *Gulf Oil Corp.* v. *Gilbert*, 330 U.S. 501,
508 (1947).

Consequently, even with the Court's recent doctrinal evolution, I read 28 U.S.C. § 1404(a) to allow transfer of a case only if the District of Massachusetts has jurisdiction over the case in the first instance. Since it is undisputed that the District of Massachusetts has both subject-matter and personal jurisdiction over the case against GHP, and since transfer of the case against Catalist is otherwise authorized, I will allow a transfer of the entire case brought by TargetSmart to the United States District Court for the District of Columbia.

In evaluating whether transfer is appropriate under § 1404(a), I consider the following factors:

> (1) the convenience of the parties, (2) the convenience of the witnesses, (3) the relative ease of access to sources of proof, (4) the availability of process to compel attendance of unwilling witnesses, (5) cost of obtaining willing witnesses, and (6) any practical problems associated with trying the case most expeditiously and inexpensively.

*F.A.I. Electronics Corp.* v. *Chambers*, 944 F. Supp. 77, 81 (D. Mass. 1996) (citing *Gulf Oil Corp.* v. *Gilbert*, 330 U.S. 501, 508 (1947)). Though ordinarily there is a presumption against transfer, "[w]hen the plaintiff's choice [of forum] is not its home forum . . . the presumption in the plaintiff's favor applies with less force, for the assumption that the chosen forum is appropriate is in such cases less reasonable." *Sinochem Int'l*, 549 U.S. at 430 (citing *Piper Aircraft*, 454 U.S. at 255-56) (internal quotations omitted).

Here, because TargetSmart is headquartered in Washington, D.C., and essentially conducts its business in the District of Columbia, the presumption in favor of keeping the matter in Boston applies with less force. GHP encourages me to find that the other factors here counsel against transfer. [*See* Dkt. No. 40; Dkt. No. 41 at 13-15].[4] GHP contends that it would be inconvenienced by a transfer, since it is headquartered in Boston, many of the relevant documents and materials are physically present in the District of Massachusetts. [Dkt. No. 40 at 3]. GHP also adds that Massachusetts law would govern pendent state law claims and, consequently, should be heard in Massachusetts. GHP argues in its supplemental opposition that

---

[4] During the January 25, 2019 hearing, TargetSmart suggested that it would not oppose transfer of its claims against Catalist to the District of Columbia if I found that the District of Massachusetts lacked personal jurisdiction over Catalist. It has since restated this position in its response to GHP's supplemental opposition to transfer. [Dkt. No. 49]. In that filing, TargetSmart stated that its position "was and continues to be that this case should move forward to the merits as soon as possible," even if it means that its claims against GHP and Catalist proceed separately in two different fora. [Dkt. No. 49 at 2]. TargetSmart's current opposition to the transfer of its claims against GHP rests on GHP's representation that it intends to challenge the personal jurisdiction in the District of Columbia, and TargetSmart's desire to avoid further motion to dismiss practice on the question of jurisdiction. As is apparent, I do not find GHP's undeveloped contention that the District of Columbia would lack personal jurisdiction over it to be colorable. Thus, TargetSmart's anxious apprehensions about further meaningful motion to dismiss practice in the District of Columbia seem less than truly threatening to the orderly travel of the entire case to conclusion in that District.

this court, because of its familiarity with the laws of the Commonwealth, is "far better suited to preside over TargetSmart's claims brought specifically under Massachusetts law" than the courts of the District of Columbia. [Dkt. No. 46 at 2].

These arguments are unpersuasive. While the District of Massachusetts may be marginally more convenient for GHP, wholesale transfer of the entire matter would hardly inconvenience it. GHP may have relevant documents at its headquarters in Boston, rather than in the District of Columbia, but it is unclear that a transfer would materially raise the cost of production. [Dkt. No. 40 at 3]. With the exception of the former President of Catalist, Laura Quinn, [Dkt. No. 41 at 14], none of the parties identify witnesses who may be in one city or another, or make any allegations regarding convenience or cost to the witnesses or the availability of process to compel their presence in a court in the District of Columbia.

Instead, opposition to transfer seems to center on the background presumption in favor of a plaintiff's choice of forum imposed by section 1404(a). However, that presumption does not apply with as great a force here, because TargetSmart is not a Massachusetts citizen. *See Sinochem Int'l*, 549 U.S. at 430. This fact, combined with my determination that this court lacks personal jurisdiction over Catalist and the fact that the

majority of interactions between the parties, at least as pled, took place in the District of Columbia [Dkt. No. 36 at ¶¶ 24, 49-53], counsel in favor of transfer.  Most fundamentally, concern about judicial efficiency powerfully supports transfer in order for the entire case to be adjudicated in one proceeding in a single forum.

GHP's opposition based on this court's familiarity with the laws of Massachusetts is essentially a make-weight.  While this circumstance may caution against transfer – for example, if the case arises out of some particularly complex or intricate area of state law or state regulatory structure – it is not, in and of itself, a reason to deny transfer.  *See Island View Residential Treatment Center, Inc.* v. *BlueCross BlueShield of Mass., Inc.*, 2007 WL 4589335 at *8 (D. Mass. Dec. 28, 2007) (citing, among others *Salve Regina College* v. *Russell*, 499 U.S. 225 (1991) and *Lynch* v. *Nat'l Prescription Administrators*, 2004 WL 385156 (S.D.N.Y. March 1, 2004)).  Indeed, a federal judge is presumed competent to make determinations of any state law, *cf. Salve Regina College*, 499 U.S. at 238-39, and I have no reason to question the capacity of my colleagues in the District of Columbia to decide what are essentially garden-variety state law claims presented here against GHP, which I again, *see supra* note 2, observe are likely to be resolved under the substantive law

of the District of Columbia even when Massachusetts choice-of-law principles are applied.

Consequently, applying the considerations governing § 1404(a), I will direct transfer of the entire case under 28 U.S.C. §§ 1631, 1406(a), and 1404(a) to the United States District Court for the District of Columbia.

## IV. CONCLUSION

For the foregoing reasons, I find that this court does not have personal jurisdiction over the Defendant, Catalist. In the interests of judicial economy, I GRANT Catalist's motion [Dkt. No. 38] to the extent of directing the Clerk to transfer the entire case to the United States District Court for the District of Columbia for adjudication. I decline to address that portion in Catalist's motion that seeks dismissal on grounds of failure to state a claim, a matter which should be addressed, if necessary, in further proceedings in the United States District Court for the District of Columbia, which is — unlike this court — authorized to exercise jurisdiction over all parties brought into this litigation by TargetSmart's operative complaint.

*/s/ Douglas P. Woodlock*_____
DOUGLAS P. WOODLOCK
UNITED STATES DISTRICT JUDGE